100 So.2d 464

Emile G. EZELL

v.

CITY–PARISH PLUMBING BOARD OF THE CITY OF BATON ROUGE, Parish of East Baton Rouge, Louisiana.

No. 43656.

Feb. 10, 1958.

R. Gordon Kean, Jr., Parish Atty., John V. Parker, Asst. Parish Atty., Baton Rouge, for defendants-appellants.

Harrison G. Bagwell, Baton Rouge, for plaintiff-appellee.

MOISE, Justice.

The suspension of the certificate of a master plumber, by the exercise of implied or general authority, presupposes that such is *reasonable, impartial, fair, general and not in contravention of common right.*

■ The District Judge in this case properly pronounced the rule of construction that an ordinance is unconstitutional when it vests arbitrary discretion in a public officer and board without prescribing a definite rule for their guidance.

Plaintiff-appellee is a master plumber, duly licensed to carry on the plumbing business in the City of Baton Rouge. His cause of action is predicated on the fact that on March 20, 1957, he received a registered letter from the Secretary of the Plumbing Board for the City of Baton Rouge, inviting him to attend a meeting of the City-Parish Plumbing Board to be held on March 25, 1957, in Room 408 of the Municipal Building at Baton Rouge, for the purpose of discussing alleged violations of the State Sanitary Code, LSA–R.S. 40:1 et seq. At the meeting, he discovered that he was a defendant and was advised that his license as a master plumber had been revoked. He states that he was not even advised of the complaints filed against him, but that during the course of the meeting he was handed a list of these complaints, none of which involved any violation of the Plumbing Code of the City of Baton Rouge, Parish of East Baton Rouge, Louisiana. He alleges that he was not confronted with any witness, was not represented by counsel, nor was he given an opportunity to present any defense.

Plaintiff thereupon instituted proceedings against the City-Parish Plumbing Board, in which he raised the question of the constitutionality of the Plumbing Code and sought certain injunctive relief. He alleged that the course of conduct taken against him was in violation of the due process clause of both the Federal and State Constitutions, U.S.Const. Amend. 5; LSA–Const. art. 1, § 6, and that the authority for the offensive action was an illegal grant of legislative and judicial power. After trial of a rule nisi, a preliminary injunction issued April 15, 1957, on the ground that

the notice sent to plaintiff was not sufficient notice as was contemplated under Section 105–a of the Plumbing Code. Defendants' exception of no cause of action, to plaintiff's prayer for a permanent injunction and his attack on the constitutionality of the Plumbing Code, was referred to the merits. After hearing, the trial judge found that certain sections of the Plumbing Code unconstitutionally delegated legislative and judicial powers, and he rendered judgment which—

1. Perpetuated a writ of preliminary injunction, issued April 15, 1957, restraining, enjoining, and prohibiting defendants from enforcing, or attempting to enforce, its order of March 25, 1957, which revoked plaintiff's certificate of Master Plumber.

2. Declared Section 117, Item (4) of the 2nd Paragraph of Section 101, and that portion of Section 105–a, which provides for the suspension of the certificate of a Master Plumber for any violation of the rules and regulations of the Plumbing Board, of the Plumbing Code of the City of Baton Rouge, Louisiana, to be invalid, unconstitutional, null and void.

Defendants have appealed to this Court and again urge the exceptions pleaded in the trial court. The appeal is, however, directed to the judgment passing on the merits of the case, and in reviewing the matter we shall only consider the constitutionality vel non of the Plumbing Code of the City of Baton Rouge.

Neither the plaintiff nor the defendants deny that the City of Baton Rouge has the right to regulate the business of plumbing. Act 169 of 1898. Plaintiff contends that, although a municipality may validly regulate the plumbing business through an administrative board, the administration must be under an ordinance providing rules and standards to govern those charged with its administration, and he argues that such do not exist in the instant code. He further contends that the provisions of the code—authorizing the board to formulate rules and regulations; to interpret the code and authorize variations thereof; making the plumbing inspector the judge of the quality of material and workmanship, and empowering him to construe the regulations as to their meaning—are invalid in that they attempt to vest legislative and judicial powers in an administrative board and official, are uncertain and indefinite, and subject licensees to the arbitrary discretion, whims, and caprice of the inspector.

The following sections of the Plumbing Code of the City of Baton Rouge were declared unconstitutional by the trial judge:

"The duties of the Plumbing Board shall be as follows:

"To formulate such regulations as the Plumbing Board deems necessary

to govern inspectors, plumbing, plumbers and gas fitters, or others doing plumbing or gas work; * * *" Item (4) of the 2nd Paragraph of Section 101.

"Master Plumber. The certificate issued or granted to any master plumber or to any person, firm, or corporation engaged in plumbing work within the City of Baton Rouge, Louisiana, may be suspended at any time by the Plumbing Board, or upon the recommendation to the Board by the City Plumbing Inspector, for any violation of the rules and regulation of the Plumbing Board and of this chapter. Wherever any improper plumbing work has been done by any master plumber or any person, firm, or corporation engaged in a plumbing business within the City of Baton Rouge, Louisiana, this said plumber's certificate may be revoked by the Plumbing Board. The City Plumbing Inspector's recommendation and proof of such improper work by a master plumber shall be submitted to the Plumbing Board for its consideration." Section 105–a.

"The City Plumbing Inspector is to be the judge of quality of the material and the workmanship, and the construing of the regulations to their meaning. Should any difference of opinion arise, appeal from his decision must be made in writing to the Chairman of the Plumbing Board and must state clearly the full particulars of disputed points within twenty-four (24) hours thereafter; otherwise, his judgment shall govern the disputed situation." Section 117.

The trial judge analyzed the contents of the above sections, and his findings read:

An analysis of the quoted portions of Section 101 and 117 shows that the code authorizes the plumbing board to formulate such regulations as it deems necessary; to interpret the provisions of the code; and to authorize variations. The plumbing inspector is authorized to construe the regulations as to their meaning."

* * * * * *

" * * * The regulations formulated by the board and construed by the inspector, are given the same force and effect as the provisions of the code, for Section 105–a provides that the certificate of a master plumber may be suspended for any violations of the rules and regulations. It appears that these provisions attempt to vest legislative and judicial powers in the board. However, pretermitting that question, another defect is apparent to me. The board is authorized to formulate such regulations as it deems necessary. No other requirement is mentioned. No duty is imposed on the board relative

to procedure in formulating the regulations, their promulgation, or their effective date. The board is free to follow its own pleasure in these respects without violating any provision of the code. Then the plumbing inspector is authorized to construe the regulations as to their meaning without being required to make any proclamation of his construction or interpretation. The board may have one purpose in mind in formulating a regulation, but the inspector may place an entirely different construction on it, and, under the provisions of the code, unless appealed the inspector's construction governs. Yet for a violation of such regulation, about which for aught the code says he may have no knowledge whatsoever, a master plumber may suffer a suspension of his certificate.

"Without violating any provision of the code the board may change its rules and regulations from day to day and from occasion to occasion without being required to give any notice whatsoever of such changes to the persons affected thereby. Even if a plumber has knowledge of these regulations he must still await the inspector's construction of them as to their meaning. Here, too, he may find changes from day to day and from occasion to occasion.

"It may be argued that the court must assume the board and the inspector will exercise these powers reasonably, fairly and impartially. In dealing with examinations and variations the court has assumed that the board will discharge its duties as imposed by the code. There the nature and scope of the examination are set forth in some detail, and the purpose for which variations may be authorized is specified, and it is assumed the board will abide by these detailed provisions. Here all that can be assumed is that the board will formulate regulations and the inspector will construe them. There are no detailed provisions by which they are required to abide.

"In my opinion there is another fatal defect in Section 117 of the code. It provides that if any difference of opinion arises between the inspector and a master plumber as to the quality of material and workmanship or the inspector's construction of the regulations as to their meaning, the inspector's decision is final unless a written appeal from his decision is made to the chairman of the plumbing board within twenty-four hours. There is no provision for a hearing on this appeal. Even if it be assumed that the board will hold a hearing, there is no requirement for an early hearing and an early decision. Then, unless the

plumber ceases work he runs the risk of having his certificate revoked for improper material and workmanship or of having it suspended for a violation of the regulations.

"It may be conceded that the board has the right to formulate reasonable rules and regulations short of those having the effect of law, and that the inspector must necessarily construe these regulations in connection with the discharge of his duties and make decisions relative to material, workmanship, and compliance with regulations, yet it is my opinion that the effect of Section 117 is to vest in the inspector the real powers conferred by the code. Decisions affecting the questions of quality of material and workmanship and compliance with regulations strike at the very heart of the plumbing trade. The inspector is made the supreme arbiter of these questions save and except for the plumber's right of appeal within the unreasonably short time of twenty-four hours, and with complete uncertainty as to any hearing and decision on his appeal.

"It is recognized that where an ordinance or statute offers no avenue of relief to a person aggrieved thereby or thereunder he may appeal to the courts, but workmen affected by a regulatory ordinance such as this can ill afford to resort to the courts. It may be repeated that the only justification for this plumbing code is the safeguarding of the health and safety of the citizens of Baton Rouge. It should be so worded and administered as to accomplish that purpose and nothing more. Those regulated by it should be able to read it and understand why and how they may incur penalties under its provisions. It is said in 37 American Jurisprudence, Municipal Corporations, Section 163, page 785, that

" 'It is a well-recognized principle of law that an ordinance must be definite and certain. Certainty is necessary in order for an ordinance to meet the test of reasonableness. The reason that an ordinance, such as one of a regulatory or prohibitory nature, must be clear, definite, and certain is that an average man should be able, with due care, after reading the same, to understand and ascertain whether he will incur a penalty for particular acts or courses of conduct. If he cannot reach such a determination from examination of an ordinance, it is void for uncertainty. * * *'

"That Section 117 and Item (4) of the second paragraph of Section 101 of the plumbing code fail to meet the above test is abundantly clear to me. In my opinion they are void for this reason. Moreover, it is my opinion

that they are unconstitutional in that they attempt to vest legislative and judicial powers in an administrative board and official, and that they deny due process of law to plaintiff herein and others similarly situated. The nullity of that portion of Section 105-a which provides for the suspension of a master plumber's certificate for any violation of the rules and regulations of the board necessarily follows."

Defendants contend on appeal that the language in Section 101, Item (4) of the Plumbing Code, delegating to the Plumbing Board the power to formulate such regulations as the Plumbing Board deems necessary to govern inspectors, plumbing, etc., when read in connection with the whole ordinance, does not grant arbitrary discretion to the Plumbing Board. It is urged that in considering this ordinance this Court must consider the legislation as a whole, must consider the object and purpose of the legislation, and must interpret the ordinance so as to render it operative and not as to cast doubt on its constitutionality. It is further contended that the delegation of power to an administrative board to make rules and regulations does not authorize that agency to promulgate regulations which are not within the scope, purpose and policy of the act giving it life, and that the Plumbing Board does not write the law regulating plumbing but simply fills in the details within the recognized administrative sphere.

■ ■ To properly pass upon the contentions herein urged, we must trace the history and origin of the delegation of powers to municipal boards.

"It is elementary that municipal corporations are creatures of the state, established by the legislature for the purpose of administering local affairs of government. Such powers as these corporations have, as well as the limits of the territory they are to govern, are all matters that are entirely within the province of the legislature and so long as there is no constitutional provision restricting the legislature's authority in this respect, that body may enlarge or diminish the territory of these corporations, consolidate one with another in whole or in part, and even terminate their existence at will. It may also legally delegate these powers to municipal authorities. 38 Am.Jur. 635, dealing with Municipal Corporations, Section 18, etc." Edwards v. Town of Ponchatoula, 213 La. 116, 34 So.2d 394, 397. Also see, Pyle v. City of Shreveport, 215 La. 257, 40 So.2d 235.

■ The City of Baton Rouge was duly incorporated by Act 169 of 1898, supra. Under Section 18, the legislative powers of the corporation were vested in a council, and under Section 20, that body was authorized to and did enact the present Plumbing Code of the City of Baton

Rouge, Louisiana. The validity of this code is to be tested by the sanction of the Legislative Act (Act 169 of 1898), rather than by the test of whether it is contrary to the Constitution. City of New Orleans v. Crescent Mutual Insurance Co., 25 La.Ann. 390. The creation of a Plumbing Board of the City of Baton Rouge (Sec. 101 of the instant code) was a valid delegation of certain powers of the City Council and was not contrary to the Legislative Act.[1] However, when the Code vested the Board with the power "to formulate such regulations as the Plumbing Board deems necessary to govern inspectors, plumbing, plumbers and gas fitters, or others doing plumbing or gas work," (Item (4) of the 2nd Paragraph of Section 101), it delegated legislative powers and went beyond the scope of the act of creation. The vesting of such arbitrary discretion in the Board therefore cast Item (4) of Section 101, 2nd Paragraph, with unconstitutionality.

In order for the Plumbing Board to validly enact rules and regulations, the Plumbing Code must set forth standards or prescribe fixed and definite limitations.

"From a review of the authorities, we find the generally accepted rule to be that a statute or ordinance vesting arbitrary discretion in a public official without prescribing fixed and definite rules or specific conditions for the official's guidance is unconstitutional. See 12 A.L.R. 1435–1455; 72 A.L.R. 229–232; Vol. 1 McQuillin on Municipal Corporations, 2d Ed., 1102, Sections 395 through 399; City of Shreveport v. Herndon, 159 La. 113, 105 So. 244; State v. Maitrejean, 193 La. 824, 192 So. 361, and the authorities cited in these various sources. * * *" City of Baton Rouge v. Shilg, 198 La. 994, 5 So.2d 312, 313.

" * * * It is recognized, according to McQuillin's Law of Municipal Corporations, that municipal legislative bodies may reserve to themselves the power to grant or deny licenses or permits, 'where they do so by an ordinance containing a rule or standard to govern them;' since it is a fundamental rule, fully applicable to zoning ordinances, 'that an ordinance must establish a standard to operate uniformly and govern its administration and enforcement in all cases, and that an ordinance is invalid where it leaves its interpretation, administration or enforcement to the unbridled or ungoverned discretion, caprice or arbitrary action of the mu-

[1]. "Defendant next contends that, even if the city council has this power, it cannot delegate the exercise of it to the board of health. But it is the invariable custom to delegate such authority to a board or other functionary, and the authority to do so is well recognized. Fischer v. City of St. Louis, 194 U.S. 361, 24 S.Ct. 673, 48 L.Ed. 1018." City of New Orleans v. Charouleau, 121 La. 890, 46 So. 911, 912, 18 L.R.A.,N.S., 368.

nicipal legislative body or of administrative bodies or officials * * *. A zoning ordinance cannot leave the exercise of property rights to the caprice, whim or esthetic sense of a special group of individuals * * *.'" McCauley v. Albert E. Briede & Son, 231 La. 36, 90 So.2d 78, 81. See also, City of Shreveport v. Provenza, 231 La. 514, 91 So.2d 777.

Many sections of the Plumbing Code set forth numerous specifications, but we do not find any statement in Item (4) of the 2nd Paragraph of Section 101 as to what standards, specifications, or rules are to govern the regulations formulated by the Plumbing Board. We cannot, therefore, say that a consideration of the whole Plumbing Code in this instance would give validity to a specific section. The trial judge was correct in his findings, supra, and we reiterate that the power granted to the Plumbing Board to formulate regulations was an unconstitutional delegation of legislative power.

"Municipal councils, or other functionaries of government, cannot renounce the powers vested in them by the constitution and laws. An ordinance of a municipality which makes even a partial surrender of political power is null." Third Municipality of New Orleans v. Ursuline Nuns, 2 La. Ann. 611.

Appellants further contend that Section 105–a of the Plumbing Code, supra, which provides for the suspension and revocation of certificates by the Plumbing Board or by the Board upon the recommendation of the City Plumbing Inspector, and Section 117, which provides that the City Plumbing Inspector is to be the judge of quality of material and workmanship, are not unconstitutional, because, in this modern, complex, and complicated civilization, discretion in many fields must be left to executive or administrative action.

We believe that this contention is answered by the following ruling from the case of City of Shreveport v. Herndon, 159 La. 113, 105 So. 244, 246:

"The general rule is that any statute or ordinance that purports to vest arbitrary discretion in a public officer, without prescribing a definite rule for his guidance, is unconstitutional. 12 A.L.R. 1436; Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220; State v. Mahner, 43 La.Ann. 496, 9 So. 480; State v. Dubarry, 44 La.Ann. [1117] 1119, 11 So. 718; State v. Kuntz, 47 La.Ann. [106] 107, 16 So. 651; City of New Orleans v. Palmisano, 146 La. 518, 83 So. 789; City of New Orleans v. Badie, 146 La. 550, 83 So. 826; State v. Carter, 159 La. 121, 105 So. 247. The rule is not without

exceptions or modification, of course, because some situations, and some statutes or ordinances, in the very nature of things, require the vesting of discretion in a subordinate commission or in the officer charged with the duty of enforcing the statute or ordinance; e. g., where it is impracticable to lay down a definite or comprehensive rule, or where the discretion relates to the enforcement of a police regulation requiring prompt exercise of judgment. City of New Orleans v. Sanford, 137 La. 628, see page 647, 69 So. 35, L.R.A. 1916A, 1228." See, also, City of Shreveport v. Provenza, 231 La. 514, 91 So.2d 777.

An examination of the record does not show any instance where the Plumbing Board or the City Plumbing Inspector has to make immediate decisions. It follows that the Plumbing Code must set forth standards and rules for the revocation of licenses and the grading of material and workmanship. These cannot be deduced from other parts of the Code. The trial judge discussed Sections 105–a and 117 in detail, and we do not feel that we can add further to his conclusions. We agree with his findings that these sections are not authorized by Act 169 of 1898 and are therefore unconstitutional because of their delegation of judicial and legislative powers.

Any appearance of criticism, as distinguished from earnest presentment, would be an error of the mind and not of the heart. On the question of power, Thomas Jefferson wrote— "Have not confidence in man, but bind him down from mischief by the chains of the Constitution."

The municipality may validly regulate the plumbing business through an administrative board; the administration must be under an ordinance providing rules and standards to govern those charged with its administration.

Judgment affirmed.

FOURNET, C. J., and SIMON, J., absent.